1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Just Josh, Inc., *and all others similarly situated*, | CASE NO. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| Microsoft Corporation, | |
| Defendant. | **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT
(Case No.              )

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (206) 299-4148

## **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................1

II. JURISDICTION, VENUE, AND CHOICE OF LAW ........................................3

III. PARTIES ..............................................................................................................3

    A. Plaintiff Just Josh, Inc. ..........................................................................3

    B. Defendant Microsoft Corporation ..........................................................3

IV. FACTUAL ALLEGATIONS ...............................................................................4

    A. Digital Marketers Commission System ..................................................4

    B. The Microsoft Web Browser Extension ................................................4

    C. Microsoft Extension Activation ..............................................................6

    D. Microsoft Exploits Last-Click Attribution.............................................9

    E. Damages & Harm ..................................................................................11

V. CLASS ACTION ALLEGATIONS ....................................................................13

VI. STATUTE OF LIMITATIONS TOLLING..........................................................15

VII. CAUSES OF ACTION ........................................................................................15

    COUNT ONE .....................................................................................................15

    COUNT TWO .....................................................................................................16

    COUNT THREE ..................................................................................................17

    COUNT FOUR ....................................................................................................19

    COUNT FIVE......................................................................................................21

    COUNT SIX ........................................................................................................22

VIII. PRAYER FOR RELIEF ......................................................................................23

IX. JURY DEMAND .................................................................................................24

CLASS ACTION COMPLAINT                    i                    Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                      1809 7th Avenue, Suite 1610
                                                                    Seattle, WA 98101
                                                                    Telephone: (206) 802-1272
                                                                    Facsimile: (206) 299-4148

Plaintiff Just Josh, Inc. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Microsoft Corporation, ("Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclass, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    Coupon browser extensions are widely used by online shoppers to identify coupons and discounts on products and services they have already added to their online shopping cart.

2.    According to Defendant, the Microsoft Shopping Browser extension is a free tool that automatically scans the internet for coupons and discount codes, provides price comparison and price history tools, and incorporates a built-in "Microsoft Cashback" system that allows shoppers to earn credits to their Microsoft Rewards account for certain purchases.

3.    Because of this, the Microsoft Shopping browser extension is appealing to customers looking for a discount on a product or service they are already interested in purchasing and have already added to their online shopping cart.

4.    Microsoft Shopping is pre-loaded on Microsoft's Edge browser, the default internet browser on every Windows computer.

5.    Microsoft Shopping can be used on desktop and laptop computers, and it can also be used on mobile devices (phones and tablets) by downloading the Microsoft Edge or Microsoft Bing Search apps.

6.    Microsoft Edge claims to have found users over $12.8 billion dollars in savings.

7.    Microsoft's Shopping browser extension, however, is designed to steal commissions from online Creators, including but not limited to website operators, online

CLASS ACTION COMPLAINT                    1                    Cotchett, Pitre & McCarthy, LLP
(Case No.                        )                                                              1809 7th Avenue, Suite 1610
                                                                                                                  Seattle, WA 98101
                                                                                                                  Telephone: (206) 802-1272
                                                                                                                  Facsimile: (650) 697-0577

publications, YouTubers, influencers, and other Creators in the online community.

8.    Creators earn money by directing their followers and viewers to specific products and services, which are linked on their respective platforms and social medial channels. A link used to purchase a particular product at a particular e-commerce site is called an "affiliate link." When a Creator's followers and viewers purchase products and services using an affiliate link, the Creator gets credit for the referrals and earns commissions on the sales.

9.    Online retailers work with Creators through affiliate marketing programs, which rely on tracking tags and affiliate marketing cookies in order to determine who gets credit for online referrals and product sales.

10.    The Creator is given a specific web link to share with their followers and audience, and if someone clicks on that link, the Creator's unique affiliate marketing code populates the shopper's cookie and credits the Creator with the sale.

11.    However, the Microsoft Shopping browser extension cheats Creators out of commissions they are entitled to during the checkout process.

12.    As described in more detail throughout this complaint, Microsoft programmed the Microsoft Shopping browser extension to systematically appropriate commissions that belong to Creators, like Plaintiff and Class members. It does so by substituting its own affiliate marketing identity code into a shopper's cookie in place of the creator's affiliate marketing identity code, and this happens even though the customer used the Creator's specific affiliate web link to purchase a product or service.

13.    Plaintiff is a Creator whose commission payments Microsoft has wrongfully misappropriated. Plaintiff brings this case on his own behalf and on behalf of all others similarly situated to recover the damages sustained and stop Microsoft's wrongful conduct going forward.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

## II.    JURISDICTION, VENUE, AND CHOICE OF LAW

14.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendant, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

15.    This court has personal jurisdiction over Microsoft because Microsoft has its principal headquarters in Redmond, Washington, does business in Washington, directly or through agents, and has sufficient minimum contacts with Washington such that it has intentionally availed itself of the laws of the United States and Washington.

16.    Venue is proper under 28 U.S.C. § 1391(a) through (d) because Microsoft's headquarters and principal place of business are located in this District, Microsoft resides in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Microsoft's governance and management personnel.

## III.    PARTIES

### A.    Plaintiff Just Josh, Inc.

17.    Plaintiff Just Josh, Inc. is an S corporation organized and existing under the laws of Arizona. Plaintiff's principal place of business is Scottsdale, Arizona. Just Josh Inc. is owned by Joshua Van Aalst.

### B.    Defendant Microsoft Corporation

18.    Microsoft Corporation ("Microsoft") is a Washington corporation with a principal place of business at 1 Microsoft Way, Redmond in King County, Washington.

CLASS ACTION COMPLAINT
(Case No.            )                3                Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

## IV.    FACTUAL ALLEGATIONS

### A.  Digital Marketers Commission System

19.    ECommerce merchants market their products through the use of affiliate marketing commission links provided to online creators of video content, websites, blogs and other digital media ("Creators"). Creators include YouTubers, bloggers, podcasters, Instagram influencers, TikTokers, and much more. Many Creators and merchants work through affiliate networks that act as intermediary platforms connecting eCommerce merchants with affiliate promoters and managing the technical implementation. This affiliate marketing industry surged 15.7 billion in 2023.[1]

20.    Creators earn their commissions by providing specialized tracking links to their audience. These tracking links are unique URLs that connect consumers to merchants' product pages while recording the referral source in the form of a identifying code that is written to a cookie that is stored on the consumer's web browser. This code has a defined lifetime, often no more than 90 days, during which time the affiliate can receive credit for the purchase, even if the customer returns to the merchant's site directly.

21.    If the user is directed to the merchant's site by a second affiliate Creator, then the original affiliate marketer's code is overwritten, ensuring that only the Creator that generated the last-click receives the commission.

### B.    The Microsoft Web Browser Extension

22.    In 2020, Microsoft pre-installed Microsoft Shopping on the Microsoft Edge browser ("Microsoft Edge Shopping"). Microsoft Edge browser is the default internet browser on every Windows PC.

---

[1] 18 Affiliate Marketing Statistics for 2025, Rewardful, December 5, 2024, https://www.rewardful.com/articles/affiliate-marketing-statistics (last visited Jan. 2, 2025).

CLASS ACTION COMPLAINT              4          Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                              1809 7th Avenue, Suite 1610
                                                            Seattle, WA 98101
                                                            Telephone: (206) 802-1272
                                                            Facsimile: (650) 697-0577

23.     Microsoft Edge Shopping claims to "search[] the web to find the best prices online and lets you know if what you're looking at is available at a lower price anywhere else."[2]  Users may "earn cashback on every purchase from top retailers, grocery stores, and more."[3]  Microsoft Edge Shopping further claims to help users "[t]rack prices with one click...monitor your favorite items and get notified when the prices drop, so you never miss out on savings."[4]  As of January 27, 2025, it claims to have found users over 12.8 billion dollars in savings.[5]

24.     Users may utilize Microsoft Edge Shopping simply by (1) opening Microsoft Edge and (2) opening a product web page.  When an offer is available, a price tag icon appears on the right side of the address bar.  The user simply needs to click the price tag icon to open Microsoft Shopping on the sidebar.

25.     The Microsoft Shopping browser extension can be added to internet browsers other than Microsoft Edge, including Google Chrome.

26.     Microsoft Shopping software is also integrated into Microsoft's Bing search engine, allowing users of Firefox or Safari website browsers to use Microsoft Shopping features.

27.     Typically, a coupon browser extension requires the user to download the extension and register for an account to access coupons and discounts. However, Microsoft Shopping is pre-installed onto devices and can be used automatically, with just a few clicks, especially since all Windows computers are pre-loaded with Microsoft Edge.

28.     This gives Microsoft a competitive advantage, allowing it to reach customers unfamiliar with browser extensions.

29.     As of 2023, Microsoft Edge has over 285 million users and is the third most used web browser in the world.

---

[2] Shop smarter with Microsoft Edge, Microsoft.com, https://www.microsoft.com/en-us/edge/shopping?form=MG0AU0&msockid=163507888573616f31ee12b584c960dd&esf=1&cs=997242635 (last visited Jan. 27, 2025).
[3] *Id.*
[4] *Id.*
[5] *Id.*

CLASS ACTION COMPLAINT                    5                    Cotchett, Pitre & McCarthy, LLP
(Case No.                        )                                                        1809 7th Avenue, Suite 1610
                                                                                                    Seattle, WA 98101
                                                                                                    Telephone: (206) 802-1272
                                                                                                    Facsimile: (650) 697-0577

C.    **Microsoft Extension Activation**

31.    Microsoft uses the Microsoft Shopping browser extension to take credit for sales commissions it did not generate – sales instead generated from a Creator's unique marketing affiliate link.

32.    Microsoft Shopping does so by altering tracking tags transmitted during the checkout process and substituting its own tracking tags in the shopper's cookie, holding Microsoft out as the referrer of the product and/or service.

33.    Microsoft misappropriates the sale even if it emanated from a Creator's specific affiliate marketing link for the product or service.

34.    The images below show what happens when an online shopper clicks on a Creator's affiliate link to purchase a product or service and proceeds to "checkout" that product or service. Whether the Creator who actually generated the purchase receives the referral and commission depends on whether the shopper has activated the Microsoft Shopping browser extension.

35.    Image 1 shows the merchant's website and the inspection panel which shows what is happening in the background before the Microsoft Shopping browser extension is activated. In this Image, the user clicked on a Creator's affiliate marketing link, added an item to their cart, and navigated to checkout. At this point, Microsoft Shopping is available but has not been activated. This Image below shows that the campaign and partner cookies attribute the referral to "JoshuaVanAalst," Joshua Van Aalst is the owner of Plaintiff Just Josh.

Image 1: This is a screenshot taken during the checkout process at bestbuy.com after clicking on Plaintiff Just Josh's affiliate marketing link.



Image 2: This image is a zoomed-in image of Image 1 above, showing that the affiliate marketing cookie correctly attributes "JoshuaVanAalst," with the referral and sale of the product.

CLASS ACTION COMPLAINT                    7            Cotchett, Pitre & McCarthy, LLP
(Case No.                )                             1809 7th Avenue, Suite 1610
                                                       Seattle, WA 98101
                                                       Telephone: (206) 802-1272
                                                       Facsimile: (650) 697-0577

36.     In the scenario shown by Image 1 and Image 2, Just Josh rightfully gets credit for the referral and should receive a commission based on its partnership with the merchant, Best Buy.

37.     However, Microsoft Shopping creates a pop-up, alerting the customer that she can earn cash back with the purchase. If the customer clicks the blue "Ok" button, Microsoft Shopping is activated and replaces the online marketer's affiliate marketing cookies with Microsoft's affiliate marketing cookies ("198_BingRebatesbyMicrosoft_0) as shown below.



Image 3: This image is a screenshot captured during checkout after the shopper activated the Microsoft Shopping browser extension by clicking a blue "Ok" button. The green check mark on the right column shows that the Microsoft Shopping browser extension is activated.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  Image 4: This is a zoomed-in screenshot of Image 3, which shows that Microsoft's marketing affiliate cookies are attributed as the campaign and partner.

17  38.     Images 3 and 4 show that Microsoft substitutes the rightful Creator's code with its

18  own code within the cookie.

19  39.     By doing so, Microsoft steals credit for the referral and purchase of the product

20  even though Microsoft did not help the shopper identify the product or identify any additional

21

22  discounts or coupons for the product.

23  **D.    Microsoft Exploits Last-Click Attribution.**

24  40.     When a consumer clicks on a Creator's affiliate marketing link, a tracking tag is

25  generated, allowing the merchant to know who should be credited with the referral and earn

26  commission for the sale.

CLASS ACTION COMPLAINT                  9          Cotchett, Pitre & McCarthy, LLP
(Case No.                        )                 1809 7th Avenue, Suite 1610
                                                   Seattle, WA 98101
                                                   Telephone: (206) 802-1272
                                                   Facsimile: (650) 697-0577

41.     The tracking tag is saved on the user's browser in a cookie. The cookie will expire sometime in the future, depending on the specific affiliate program – usually between 2-30 days. This ensures that the Creator will get credit for the sale, even if it takes a few days for the consumer to make the purchase.

42.     The industry-standard for crediting sales is that the last click determines who gets credit for the sale – known as "last click attribution."

43.     "For example, let's say that a customer starts their journey on Facebook by clicking on an ad and then Googles the company name, then sees another ad, clicks on it on Google, visits a website, and completes a purchase. In the case of last-click attribution, only the final click from Google Ads would get the credit for the conversion. Similarly, in mobile app install campaigns, while a person might see five or six ads before eventually deciding to tap one and install the app, only the last tap gets credit." [6]

44.     The Microsoft Shopping Browser extension exploits last-click attribution by creating pop-ups during the checkout process. By doing this, Microsoft forces customers to engage with the Microsoft Shopping browser extension – via clicks - to receive a discount, test coupons, or earn cash back. When the customer clicks on the Microsoft Shopping browser extension and activates Microsoft Shopping, Microsoft takes credit for the sale by replacing the affiliate link as the last-click, even when it has not identified any applicable coupons.

45.     **Scenario 1**: After being referred to a product by a Creator, the customer proceeds to checkout. Microsoft Shopping creates a pop-up alerting the customer that "Microsoft Edge found coupons," incentivizing them to apply these coupons by clicking the "Try all coupons"

---

[6] Glossary Mobile App Terminology, SINGULAR, https://www.singular.net/glossary/last-click-attribution/ (last visited Jan. 26, 2025).

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

button. Upon clicking the button, Microsoft displaces the prior affiliate marketing code and invisibly inserts its own affiliate marketing code. Microsoft has stolen the commission.

46.    **Scenario 2**: The same customer proceeds to checkout and Microsoft creates a pop-up, informing the customer that "Microsoft Edge found coupons," incentivizing the customer to click the "Try all coupons" pop up button. The customer clicks the button, but none of the discount codes work. Regardless, Microsoft displaces the prior affiliate marketing code and invisibly inserts its own affiliate marketing code even though Microsoft failed to identify an applicable coupon.

47.    **Scenario 3**: Microsoft created a rewards program, Microsoft Shopping's Cash Back rewards, to displace affiliate codes even when no coupons are available. Microsoft Shopping Cash Back gives users redeemable points even when coupon codes are unavailable. Here, Microsoft Shopping incentives the customer to activate its cash back rewards feature to "Get up to 3% cash back." Once the customer clicks the "OK" button, Microsoft again removes the prior affiliate marketer's code and replaces them with Microsoft's, allowing it to take credit and commission for the sale.

48.    In each scenario, Microsoft Shopping encourages the customer to click on their links, which generates their referral code and steals commissions from Creators who actually referred the shopper to the ecommerce site..

E.    **Damages & Harm**

49.    On information and belief, Plaintiff and Class Members were harmed by Microsoft's conduct because the Microsoft Shopping browser extension systematically steals commission payments from their rightful owners – i.e. the individual who promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

CLASS ACTION COMPLAINT                    11                    Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                          1809 7th Avenue, Suite 1610
                                                                                 Seattle, WA 98101
                                                                                 Telephone: (206) 802-1272
                                                                                 Facsimile: (650) 697-0577

50.    When Microsoft Shopping's cookie overwriting scheme artificially replaces Plaintiff's referral tags with its own, Plaintiff has been deprived of referral fees and sales commissions to which it is rightfully entitled.

51.    The Microsoft Shopping browser extension is activated during millions of online purchases each year. In the absence of the Microsoft Shopping browser extension, Plaintiff and Class Members would have earned money in the form of referral fees and sales commissions from their respective affiliate marketing links.

52.    Plaintiff continues to devote time and energy to content creation to generate commissions. Plaintiff accordingly faces future harm in the form of stolen referral fees and sales commissions because the Microsoft Shopping browser extension continues to steal affiliate marketing commissions with each passing day.

53.    Defendant systematically steals commissions from content creators that promoted the merchant's products and drove customers to their eCommerce stores.

54.    Plaintiff Just Josh, Inc. has worked since 2019 to review electronic products and provide valuable content to viewers through its YouTube channel and website. Just Josh has produced nearly 300 YouTube videos and boasts 288,000 subscribers to its channel. In November 2024, Just Josh's website received 68,000 visitors.

55.    Just Josh has relied on affiliate marketing links on YouTube and its website since its inception. The Just Josh Inc. Website received 64,000 unique visitors in November 2024.

56.    Just Josh has spent substantial time and money developing a community of viewers that support it and reviewing products for which it provides affiliate links. In November 2024, Just Josh, Inc. Received approximately $50,000 in affiliate link revenue.[7]

## V.    CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

**Nationwide Class:** All persons and entities in the United States who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to Microsoft as a result of Microsoft Shopping.

**Arizona Subclass:** All members of the Class who reside in the State of Arizona.

58.    **Numerosity and Ascertainability:** Members of the Class are so numerous that joinder is impracticable. The Class encompasses at least tens of thousands of individuals and entities geographically dispersed throughout the United States, such that joinder of all Class members is impracticable. There are at least thousands of members of the Subclass, such that joinder of all subclass members is similarly impracticable.

59.    **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

a.    Whether Microsoft developed and structured the Microsoft Shopping browser extension in a way that unfairly attributes sales referrals to Microsoft;

b.    Whether Microsoft was unjustly enriched to the detriment of Plaintiff in the form of commission payments;

---

[7] Note that product returns can cause the level of affiliate link revenue to decrease somewhat in the few months following each period of accounting. Usually, after 3-4 months, the total for a particularly month no longer changes.

CLASS ACTION COMPLAINT                    13          Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                    1809 7th Avenue, Suite 1610
                                                                            Seattle, WA 98101
                                                                            Telephone: (206) 802-1272
                                                                            Facsimile: (650) 697-0577

**c.** Whether the system described herein results in Microsoft being awarded commission payments it did not rightfully earn;

**d.** Whether Plaintiff and Class members have been damaged by Microsoft's conduct; and

**e.** The nature and scope of appropriate injunctive relief.

60.    **Typicality:** Plaintiff's claims are typical of the other Class members' claims because all Class members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to the Plaintiff. The claims of Plaintiff and Class members arise from the same operative facts and are based on the same legal theories.

61.    **Adequacy:** Plaintiffs is a Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and his counsel.

62.    **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriments suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases

CLASS ACTION COMPLAINT                    14              Cotchett, Pitre & McCarthy, LLP
(Case No.                      )                                        1809 7th Avenue, Suite 1610
                                                                                      Seattle, WA 98101
                                                                                      Telephone: (206) 802-1272
                                                                                      Facsimile: (650) 697-0577

the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    STATUTE OF LIMITATIONS TOLLING

63.    All applicable statute(s) of limitations have been tolled by Microsoft's active and knowing concealment and denial of the facts alleged herein. Plaintiff and Class members had no reasonable means of discovering that Microsoft was covertly stuffing cookies with its affiliate marketing codes and modifying network data to claim commissions for sales it did not legitimately generate.

64.    Microsoft has an ongoing obligation to disclose to Plaintiff and Class members its practice of replacing affiliate marketing tags that identify marketers as the source of referrals, substituting them with its own tracking tags to redirect commissions that rightfully belong to Creatorrs such as Plaintiff and Class members. Due to Microsoft's active concealment of this practice, any statutes of limitations that would typically apply to these allegations have been tolled and suspended.

## VII.    CAUSES OF ACTION

### COUNT ONE
CONVERSION

65.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.    Plaintiff and Class Members possessed or had the right to possess commissions they earned from referring consumers to products and services sold by eCommerce merchants. Each commission constitutes a specific and identifiable sum.

67.    Microsoft intentionally and substantially interfered with Plaintiff's and Class members' personal property by usurping their commissions and referral fees.

CLASS ACTION COMPLAINT        15        Cotchett, Pitre & McCarthy, LLP
(Case No.                    )         1809 7th Avenue, Suite 1610
                                        Seattle, WA 98101
                                        Telephone: (206) 802-1272
                                        Facsimile: (650) 697-0577

68.    Without proper authorization, Microsoft assumed and exercised the right of ownership over these commissions, in direct hostility to the rights of Plaintiff and Class members, without justification.

69.    Microsoft's wrongful exercise of control over Plaintiff's and Class members' personal property amounts to conversion.

70.    Plaintiff and Class members neither assented to nor ratified Microsoft's interference with their referral fees or commissions.

71.    As a direct and proximate result of Microsoft's conversion, Plaintiff and the Class was harmed.

72.    Microsoft is liable to Plaintiff and the Class for damages and costs permitted by law.

## COUNT TWO
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

73.    Plaintiff incorporates the allegations in Paragraphs 1-64 as if fully set forth herein.

74.    Plaintiff and the Class are engaged in contracts or ongoing business relationships with eCommerce merchants. Plaintiff and the Class drive customers to merchant stores through affiliate links, and in return the merchants provide Plaintiff and the Class with commissions. These contracts and economic relationships are ongoing.

75.    Microsoft knew that Plaintiff and the Class worked to drive customers to their merchant partners' websites through affiliate links. Microsoft knew that Plaintiff and the Class received their commissions based on associated unique affiliate codes, and that the merchants assessed the success of their affiliate program based on these cookies. Microsoft knew these contractual and business relationships existed.

CLASS ACTION COMPLAINT                16                Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                       1809 7th Avenue, Suite 1610
                                                                          Seattle, WA 98101
                                                                          Telephone: (206) 802-1272
                                                                          Facsimile: (650) 697-0577

76.    Microsoft intentionally disrupted Plaintiff and the Class's performance of the contractual and business obligations, or knew that their actions made performance more expensive, difficult, or impossible. Microsoft displaces these codes that identify Creators as the sources of the referral, stuffs their own affiliate code into cookies, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from a Creator's affiliate marketing link. Microsoft intended to usurp commissions from Plaintiff and Class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees from Plaintiff and Class members.

77.    Plaintiff and the Class were harmed by Microsoft's conduct because Microsoft Shopping deprives them of commissions and referral fees they rightfully earned as the true drivers of the merchant sales.

78.    As a direct and proximate result of Microsoft's conduct, Plaintiff and the Class suffered economic injury by being deprived of commissions they should have earned through their affiliate links.

79.    As a result of the conduct described above, Microsoft is liable to Plaintiff and the Class for damages in an amount to be determined at trial.

## COUNT THREE
VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
18 U.S.C. §§ 1030, *ET SEQ.*
(ON BEHALF OF THE CLASS)

80.    Plaintiff incorporates the allegations in Paragraphs 1-64 as if fully set forth herein.

81.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) makes it unlawful to: "knowingly and with intent defraud, access[] a protected computer without authorization, or exceed[] authorized access, and by means of such conduct further[] the intended fraud and obtain [] anything of value…"

CLASS ACTION COMPLAINT                    17                    Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                    1809 7th Avenue, Suite 1610
                                                                 Seattle, WA 98101
                                                                 Telephone: (206) 802-1272
                                                                 Facsimile: (650) 697-0577

82.    18 U.S.C. § 1030(g) provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation of this section[.]"

83.    Consumers' computers are used in interstate and foreign commerce or communication.

84.    Defendants violated § 1030(a)(4), by knowingly, and with intent to defraud Plaintiff and Class members, accessing cookies on consumers' browsers containing Plaintiff's and Class members' data, via the Microsoft Shopping browser extension, and altered that data without data without authorization or by exceeding authorized access, and by means of such conduct furthered the intended fraud and obtained commissions earned by Plaintiff and Class members.

85.    Furthermore, Defendant violated § 1030(a)(4) by deliberately pre-installing Microsoft Shopping on the Microsoft Edge browser, which is the default internet browser on every Windows PC sold in the United States. Consumers were forced to use Microsoft Shopping browser extension, and unknowingly had their shopping data altered, unless they affirmatively opted out by deleting the extension or refraining from using the Microsoft Edge browser.

86.    Defendant's access was without authorization or in excess of authorized access, because the purpose of the access was to enact a commission diversion scheme, whereby Defendant surreptitiously used consumers' computers to defraud Plaintiff and Class members by altering Plaintiff's and Class members' data to steal their commissions.

87.    Plaintiff and Class members have suffered damage and loss, aggregating at least $5,000 in value in any 1-year period during the relevant period, including, without limitation, their earned commissions as a result of Defendant's violation of 18 U.S.C. § 1030.

88.     Defendant's unlawful access to and theft of Plaintiff's and Class members' commissions through unauthorized access of the data on consumers' computers caused Plaintiff and Class members irreparable injury. Unless restrained and enjoined, Defendant will continue such acts. Plaintiff's and Class members' remedies at law are not adequate to compensate them for these threatened injuries, entitling Plaintiff and Class members to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## COUNT FOUR
## VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### 18 U.S.C. §§ 2510, *ET SEQ.*
### (ON BEHALF OF THE CLASS)

89.     Plaintiff re-alleges and incorporates by reference all factual allegations above as if fully set forth herein.

90.     The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 et seq., makes it unlawful for a "person" to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

91.     18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

92.     The transmission of Plaintiff's and Class members' unique affiliate source data (i.e., unique ID and coupon code) to the merchant (via the cookie generated by consumer action) qualifies as Plaintiff's and Class Members' "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

93.     By allowing the Microsoft Shopping browser extension to intercept and surreptitiously manipulate Plaintiff's and Class members' unique ID and coupon code contained

in a cookie on consumers' web browsers, Defendant intentionally intercepted and/or endeavored to intercept the contents of "electronic communications" in violation of 18 U.S.C. § 2511(1)(a).

94. No party to the electronic communication alleged herein consented to Defendants' interception and manipulation of the electronic communication. Nor could they because Defendant's actions were surreptitious.

95. 18 U.S.C. § 2511(2)(d) provides an exception to 18 U.S.C. § 2511(1), under which: "It shall not be unlawful under this chapter [18 USC §§ 2510 et seq.] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

96. Defendant does not meet the requirements of the "party exception" to the ECPA because, as detailed herein, the electronic communications intercepted by Defendant were intercepted as part of Defendant's tortious practice of converting commissions and interfering with Plaintiff's and Class Members' economic advantage, that is also in violation of federal law, Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

97. Accordingly, Defendant violated the ECPA each time they intercepted Plaintiff's and Class members' electronic communications via the Microsoft Shopping extension.

98. Pursuant to 18 U.S.C. § 2520, Plaintiff and Class members have been damaged by the interception of their electronic communications in violation of the ECPA and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and the

Class and any profits made by Defendant as a result of its violations, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT FIVE
VIOLATION OF ARIZONA CONSUMER FRAUD ACT,
A.R.S. §§ 44-1521, *et seq*

99.   Plaintiff Just Josh, Inc., individually and on behalf of the Arizona Subclass, repeats and realleges the allegations contained in Paragraphs 1-64 as if fully set forth herein.

100.   Microsoft is a "person" as defined by A.R.S. § 44-1521(6).

101.   Microsoft advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

102.   Microsoft engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in the Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

103.   Microsoft's business acts and practices are unfair and deceptive because they wrongfully interfere with Plaintiff's and the Arizona Subclass's business and contractual relationship, causing harm.

104.   Microsoft wrongfully deprives Plaintiff and Subclass members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

105.   Microsoft actually and proximately caused harm to Plaintiff and Subclass members in that, among other things, they suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

1  106.   The conduct alleged herein is continuing and there is no indication that Microsoft

2  will cease such activity in the future.

3  107.   Microsoft's conduct in violation of the ACFA has caused Plaintiff and Subclass

4  members to be deprived of referral fees and commission payments for sales they rightfully

5  originated. Plaintiff and the members of the Arizona Subclass thus suffered lost money or

6  property as a result of Microsoft's conduct.

7  108.   As a consequence of the unfair or deceptive acts engaged in by Microsoft, Plaintiff

8  and the Class have been damaged in an amount to be proven at trial, and Plaintiff and the Class

9  are entitled to an injunction, all other appropriate relief in equity, restitution, the recovery of their

10  actual damages, trebled, plus attorney's fees and other costs of this action.

### COUNT SIX
VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
RCW § 19.86, et seq.

109.   Plaintiff incorporates the allegations in Paragraphs 1-64 as if fully set forth herein.

110.   Microsoft is a "person" within the meaning of the Washington Consumer

Protection Act, RCW § 19.86.010(1), and it conducts "trade" and "commerce" within the

meaning of RCW § 19.86.010(2). Plaintiff and other members of the Class are "persons" within

the meaning of RCW § 19.86.010(1).

111.   Microsoft is headquartered in Washington and designed the Microsoft Shopping

browser extension in such a manner that it cheats Creators out of commissions they are entitled

to by altering the checkout process and replacing their tracking tags and affiliate marketing

identifiers.

112.    Microsoft's unfair acts have injured a substantial portion of the public. Microsoft's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

113.    As a direct and proximate result of Microsoft's unfair acts and practices, Plaintiff and Class members have suffered injury in fact.

114.    As a result of Microsoft's conduct, Plaintiff and Class members have suffered actual damages.

115.    Plaintiff and Class members are entitled to an order enjoining the conduct complained of herein and ordering Microsoft to take remedial measures to stop its conduct; actual damages; treble damages pursuant to RCW § 19.86.090; costs of suit, including reasonable attorneys' fees; and such further relief as the Court may deem proper.

## VIII.    **PRAYER FOR RELIEF**

116.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A.    Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel

B.    Enter judgment in favor of Plaintiff and the Class;

C.    Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices to prevent the Microsoft Shopping browser extension from taking credit for sales it did not originate;

D.    Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E.    Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

F.    Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G.    Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Microsoft through its wrongful conduct;

H.    Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I.    Award such other and further relief as the Court deems necessary and appropriate.

## IX.    JURY DEMAND

117.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

DATED this 31st day of January 2025 .

**COTCHETT, PITRE & MCCARTHY, LLP**

By:   */s Thomas E. Loeser*
      Thomas E. Loeser, WSBA # 38701
By:   */s/ Karin Swope*
      Karin B. Swope, WSBA # 24015
      Attorneys for Plaintiffs
      1809 7th Avenue, Suite 1610
      Seattle, WA 98101
      Telephone: (206)-802-1272
      Facsimile: (206)-299-4184
      tloeser@cpmlegal.com
      kswope@cpmlegal.com